**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | ) ) |
| | ) **MDL No. 2873** |
| Plaintiff, | ) |
| | ) |
| v. | ) **Master Docket No. 2:18-mn-2873** |
| | ) |
| AGC CHEMICALS AMERICAS, INC., | ) **Judge Richard Mark Gergel** |
| ARCHROMA U.S., INC., | ) |
| ARKEMA, INC., | ) **Civil Action No.** |
| BASF CORPORATION, | ) |
| BUCKEYE FIRE EQUIPMENT | ) |
| COMPANY, | ) **COMPLAINT AND DEMAND FOR** |
| CARRIER FIRE & SECURITY | ) **JURY TRIAL** |
| AMERICAS CORPORATION (f/k/a | ) |
| UTC FIRE & SECURITY AMERICAS | ) |
| CORPORATION), | ) |
| CARRIER GLOBAL CORPORATION, | ) |
| CHEMGUARD, INC., | ) |
| CLARIANT CORPORATION, | ) |
| DYNAX CORPORATION, | ) |
| KIDDIE PLC INC., | ) |
| JOHN DOE DEFENDANTS 1-49, | ) |
| NATIONAL FOAM, INC., and | ) |
| TYCO FIRE PRODUCTS LP (as | ) |
| successor-in-interest to The Ansul | |
| Company), | |
| | |
| Defendants. | |

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

**SUMMARY OF THE CASE**

1.      Plaintiff, The Pennsylvania State University ("Plaintiff"), owns and operates water systems that provide drinking water to Plaintiff's University Park and Wilkes Barre campuses in Pennsylvania.  Plaintiff brings this action to recover the substantial costs necessary to protect its raw drinking water supply that contains synthetic per- and polyfluoroalkyl substances ("PFAS").

1

2.     Plaintiff brings this action to recover costs associated with the ongoing presence of PFAS chemicals in the environment, and for such other action as is necessary to ensure that the PFAS that contaminate Plaintiff's raw drinking water supply does not present a risk to the public. In this Complaint, the term PFAS, includes without limitation, perfluorooctanesulfonic acid ("PFOS"), perfluorooctanoic acid ("PFOA"), perfluorobutanesulfonic acid ("PFBS"), and perfluorohexanesulfonic acid (PFHxS) as well as all of their salts and ionic states, the acid forms of the molecules and their chemical precursors, and any other compounds the State regulates in the future.

3.     PFAS are persistent, toxic, and bioaccumulative compounds when released into the environment. PFAS have impacted stormwater, surface water and groundwater, and now contaminate the raw water relied on by Plaintiff as its source of drinking water.

4.     Defendants are companies that designed, manufactured, marketed, distributed, and/or sold PFAS, the chemical precursors of PFAS, and/or products containing PFAS, and/or their chemical precursors. Defendants made products with PFAS including, but are not limited to, Teflon®, Scotchgard®, waterproofing compounds, stain-proofing compounds, waxes, cloth coatings, paper and food package coatings like Zonyl®, aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish Class B fuel fires, and fluorosurfactants used in the manufacture of AFFF as well as telomer building blocks used to make fluorosurfactants that were then used to manufacture other PFAS-containing products, including AFFF. Collectively, Defendants' PFOA, PFOS, precursors, products containing PFAS, AFFF, and other products and intermediates containing PFAS are referred to herein as "Fluorochemical Products."

5.     Defendants were aware that their Fluorochemical Products would be and have been used, released, stored, and/or disposed of at, near, or within the vicinity of Plaintiff's raw drinking water supply such that PFAS, and their chemical precursors would enter the environment, migrate through the

soil, sediment, stormwater, surface water, and groundwater, thereby contaminating Plaintiff's raw drinking water supply.

6.    As a result of the use of Defendants' Fluorochemical Products for their intended purpose, PFAS and/or their chemical precursors have been detected in Plaintiff's raw drinking water supply.

7.    Defendants knew or reasonably should have known that their PFAS compounds would reach groundwater, pollute drinking water supplies, render drinking water unusable and unsafe, and threaten public health and welfare.

8.    Plaintiff files this lawsuit to recover compensatory and all other damages and relief, including all necessary funds to compensate Plaintiff for the costs of investigating, designing, constructing, installing, operating, and maintaining the treatment facilities and equipment required to remove PFAS from its raw drinking water supplies and for such other damages and relief the Court may order.

## PARTIES

9.    Plaintiff is The Pennsylvania State University ("Penn State"), a state related institution of higher education and instrumentality of the Commonwealth of Pennsylvania organized and existing under the Not for Profit Corporation Laws of Pennsylvania.  Plaintiff has campuses and facilities located throughout Pennsylvania. Plaintiff's primary address is 201 Old Main, University Park, Pennsylvania 16802.  Plaintiff has detected PFAS in its raw drinking water supplies at its University Park and Wilkes Barre campuses.

10.    Defendant Tyco Fire Products LP ("Tyco") is a limited partnership formed in the State of Delaware with its principal place of business at 1400 Pennbrook Parkway, Landsdale, Pennsylvania. Tyco is an indirect subsidiary ultimately wholly owned by Johnson Controls International plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI]. Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990. (Ansul and Tyco, as the

successor in interest to Ansul, will hereinafter be collectively referred to as "Tyco/Ansul.") Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF that contained fluorochemical surfactants containing PFOA throughout the United States, including in Pennsylvania. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and sell AFFF that contained fluorocarbon surfactants containing PFOA throughout the United States, including in Pennsylvania. Tyco/Ansul does business throughout the United States including in Pennsylvania. Upon information and belief, Tyco/Ansul manufactured, distributed, and/or sold AFFF foam containing PFOA in Pennsylvania and which has contaminated Plaintiff's raw drinking water supply.

11.     Defendant Chemguard, Inc. is a Texas corporation with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Beginning in or around 1994, Chemguard began manufacturing AFFF that contained PFOA. Upon information and belief, Chemguard manufactured, distributed, and/or sold AFFF foam containing PFOA throughout the United States including in Pennsylvania. Upon information and belief, Chemguard manufactured, distributed, and/or sold AFFF foam containing PFOA in Pennsylvania and which has contaminated Plaintiff's raw drinking water supply.

12.     Defendant AGC Chemicals Americas Inc. ("AGC") is a corporation organized and existing under the laws of Delaware, having a principal place of business in 5 East Uwchlan Avenue, Suite 201, Exton, PA 19341. AGC and/or its affiliates manufactured fluorochemicals used in products. AGC does and/or has done business throughout the United States. On information and belief, AGC is the North American subsidiary of AGC Inc. (f/k/a Asahi Glass, Co., Ltd.) and does business throughout the United States.

13.     Defendant BASF Corporation ("BASF") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 100 Park Avenue, Florham Park, New Jersey 07932. On information and belief, BASF is the successor in interest to Ciba

4

Inc. (f/k/a Ciba Specialty Chemicals Corporation). On information and belief, Ciba Inc. manufactured, marketed, promoted, distributed, and/or sold fluorochemicals and fluorosurfactants that contained PFAS used to manufacture products, and those fluorochemicals, fluorosurfactants, and Fluorochemical Products were transported, stored, used, handled, trained with, used to test equipment, released, spilled, otherwise discharged, and/or disposed in Pennsylvania, and have contaminated Plaintiff's raw drinking water supply. BASF does business throughout the United States.

14.    Defendant Carrier Fire & Security Americas Corporation (f/k/a UTC Fire & Security Americas Corporation) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Carrier Fire is the indirect parent of Kidde-Fenwal, Inc., which is the successor in interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc., f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Carrier Fire is also the successor in interest to UTC Fire & Security Americas Corporation, Inc., following the spinoff transaction described immediately below. Carrier Fire, through Kidde/Kidde Fire, has manufactured, marketed, promoted, distributed, and/or sold Fluorochemical Products that contained PFAS that was transported, stored, used, handled, trained with, used to test equipment, released, spilled, otherwise discharged, and/or disposed in Pennsylvania, and which has contaminated Plaintiff's raw drinking water supply. Carrier Fire has done business throughout the United States.

15.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, UTC is now a division of Carrier. Upon information and belief, Carrier does and/or has done business throughout the United States, including in Pennsylvania.

16.    Defendant Clariant Corporation ("Clariant") is a corporation organized and existing under the laws of New York, having a principal place of business at 4000 Monroe Road, Charlotte,

North Carolina. Clariant manufactured fluorochemicals used in products. On information and belief, Clariant was formerly known as Sandoz Chemicals Corporation and as Sodyeco, Inc and does and/or has done business throughout the United States, including in Pennsylvania.

17.    Defendant Dynax Corporation ("Dynax") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 79 Westchester Avenue, Pound Ridge, New York 10576 and an address for service of process at 103 Fairview Park Drive Elmsford, New York 10523-1544. Dynax manufactured fluorosurfactants used in products and does and/or has done business throughout the United States including in Pennsylvania.

18.    Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086. Beginning in or around 2004, Buckeye manufactured, distributed, and/or sold products containing PFOA. Buckeye does business throughout the United States, including in Pennsylvania. Upon information and belief, Buckeye manufactured, distributed, and/or sold products containing PFOA in Pennsylvania and which has contaminated Plaintiff's raw drinking water supply.

19.    Defendant National Foam, Inc. (a/k/a Chubb National Foam) ("National Foam") is a Pennsylvania corporation, having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382. National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). At all relevant times, National Foam manufactured fire suppression products that contained PFAS compounds. Upon information and belief, National Foam manufactured, distributed, and/or sold products containing PFOA in Pennsylvania which has contaminated Plaintiff's raw drinking water supply.

20.    Defendant Arkema, Inc. ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, PA

19406. Arkema and/or its predecessors manufactured fluorosurfactants used in products. Arkema is a successor in interest to Atochem North American, Inc., Elf Atochem North America, Inc., and Atofina Chemicals, Inc. and does and/or has done business throughout the United States, including in Pennsylvania, and is registered to business in the Commonwealth of Pennsylvania.

21.     Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217.  Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorochemical Products for use in products sold throughout the United States, including in Pennsylvania. On information and belief, Archroma is a successor to Clariant.

22.     Defendant Kidde PLC, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at Nine Farm Springs Road, Farmington, Connecticut 06032. Kidde PLC was part of United Technologies Corporation. At all relevant times, Kidde PLC conducted business throughout the United States, including in Pennsylvania. Kidde PLC, through Kidde/Kidde Fire, manufactured, marketed, promoted, distributed, and/or sold products that contained PFAS throughout the United States, including in Pennsylvania, and which has contaminated Plaintiff's raw drinking water supply. In accordance with the KFI Bankruptcy Injunction Order, Plaintiff is filing and effecting service of process of this Complaint to preserve all of its rights and claims with respect to this Defendant; however, Plaintiff reserves all of its rights in connection with the KFI Bankruptcy Injunction Order and otherwise.

23.     Upon information and belief, Defendant John Does 1-49 were manufacturers, distributors, and/or sellers of Fluorochemical Products. Although the identities of the John Doe Defendants are currently unknown, Plaintiff expects that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those entities' actual names to the complaint as defendants.

24.     Any and all references to a defendant or defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named defendants.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

26.     Plaintiff is filing this complaint as permitted by Case Management Order No. 3 ("CMO 3") issued by Judge Richard M. Gergel of this Court. Pursuant to CMO 3, Plaintiff designates the United States District Court for the Middle District of Pennsylvania as the "home venue" where Plaintiff would have otherwise filed suit pursuant to 28 U.S.C. § 1391. But for CMO 3, venue is proper in the United States District Court for the Middle District of Pennsylvania in that the events or omissions giving rise to the claim occurred in that District. Plaintiff respectfully requests that, at the time of the transfer of this action back to trial court for further proceedings, this case be transferred to the United States District Court for the Middle District of Pennsylvania.

27.     The United States District Court for the Middle District of Pennsylvania has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants purposefully manufactured, designed, advertised, marketed, distributed, released, promoted and/or otherwise sold (directly or indirectly) PFAS-containing products to various locations, such that each Defendant knew or should have known that said products would be delivered to areas in the Commonwealth of Pennsylvania that ultimately would impact the raw drinking water supply. Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Middle District of Pennsylvania does not offend traditional notions of fair play and substantial justice.

## BACKGROUND AND FACTUAL ALLEGATIONS
## THE PFAS COMPOUNDS

28.     PFAS are a family of chemical compounds containing fluorine and carbon atoms.

29.     PFAS have been prevalently used for decades in industrial settings and in the production of thousands of common household and commercial products that are heat resistant, stain resistant, long lasting, and water and oil repellant.

30.     The PFAS family of chemicals are entirely anthropogenic and do not exist in nature.

31.     PFOA and PFOS are PFAS that are known to have characteristics that cause extensive and persistent environmental contamination.

32.     Specifically, PFOA and PFOS are persistent, toxic, and bioaccumulative as well as highly mobile in soil and groundwater.

33.     PFOA and PFOS are mobile in that they are soluble and do not easily adsorb (stick) to soil particles.

34.     PFOA and PFOS are readily transported through the air as well as the soil and into groundwater where they can migrate long distances.

35.     PFOA and PFOS are persistent in that they do not readily biodegrade or chemically degrade in the environment or in conventional treatment systems for drinking water or wastewater.

36.     PFOA and PFOS are thermally, chemically, and biologically stable in the environment and resistant to biodegradation, atmospheric photo-oxidation, direct photolysis, and hydrolysis.

37.     Once PFOA and/or PFOS are applied, discharged, disposed of, or otherwise released onto land or into the air, soil, sediments, or water, they migrate through the environment and into groundwater and surface water.

38.     PFOA and PFOS resist natural degradation and are difficult and costly to remove from soil and water.

39.     Contamination from PFOA and/or PFOS presents a threat to public health and the environment.

40.     In addition to drinking contaminated water, humans can be exposed to PFOA and PFOS through inhalation, ingestion of contaminated food, and dermal contact.

41.     PFOA and PFOS enter the environment from industrial facilities that use PFAS in the manufacture or production of other products.

42.     Releases of PFAS to land, air, and water from industrial sites are known pathways to the environment for PFOA and PFOS.

43.     PFOA and PFOS may also enter the environment when released from PFAS-containing consumer and commercial products during their use, and after they have been disposed to landfills or in any other manner.

44.     Defendants have known of health and environmental risks associated with PFAS compounds for decades but concealed that knowledge until it was exposed through litigation and regulatory action in relatively recent years.

45.     Defendants' manufacture, distribution and/or sale of PFOA and/or PFOS and/or products containing PFOA and/or PFOS resulted in the release of PFOS and/or PFOA into the environment.

46.     Through their involvement and/or participation in the creation of consumer or other commercial products and materials and related training and instructional materials and activities, Defendants knew, foresaw, and/or should have known and/or foreseen that PFOA and/or PFOS would contaminate the environment.

47.     Defendants knew, foresaw, and/or should have known and/or foreseen that their marketing, promotion, development, manufacture, distribution, release, training of users of, production of instructional materials about, sale and/or use of PFOA and/or PFOS containing materials, including in Pennsylvania, would result in the contamination of the soil and groundwater.

48.     Defendants' products were unreasonably and inherently dangerous and the Manufacturer Defendants failed to warn of this danger.

## PLAINTIFF'S DRINKING WATER SUPPLIES

49.     On information and belief, Plaintiff's raw drinking water supply has been contaminated by the use and discharge of Fluorochemical Products such that Fluorochemical Products has traveled via surface water, stormwater, groundwater, to contaminate Plaintiff's raw drinking water supply.

50.     PFAS have impacted surface water, stormwater and groundwater, and now contaminate the raw water relied upon by Plaintiff as a source of drinking water.

51.     Because of the risks that PFAS pose to human health, the Commonwealth of Pennsylvania has established maximum contamination levels of 14 parts per trillion ("ppt") for PFOA, 18 ppt for PFOS.

52.     In June 2022, the federal EPA issued new interim lifetime drinking water health advisories of 0.004 ppt for PFOA and 0.02 ppt for PFOS in drinking water.

53.     In March 2023, the federal EPA proposed a maximum contaminant level of 4 ppt for PFOA and 4 ppt for PFOS.

54.     In April 2024, the federal EPA signed a final rule setting maximum contaminant level of 4 ppt for PFOA and 4 ppt for PFOS.  The federal EPA's final rule also set a maximum contaminant level of 10 ppt for PFHxS, PFNA, and HFPO-DA.

55.     Defendants' PFOA and PFOS has been detected in Plaintiff's raw drinking water supplies.

## FIRST CAUSE OF ACTION
### Strict Products Liability Based on Failure to Warn
### (By Plaintiff against all Defendants)

56.     Plaintiff repeats and restates the allegations set forth in the previous paragraphs as if fully set forth herein.

57.     The use of Fluorochemical Products in the proximity of Plaintiff's raw drinking water supply for consumer use, manufacturing, training of fire personnel, firefighting, and disposal in landfills

was a reasonably foreseeable use. Defendants knew or should have known that Fluorochemical Products used in this manner can contaminate soil, surface water, stormwater and groundwater with PFAS, creating a significant threat to human health and the environment.

58.    It was foreseeable that PFAS from the Fluorochemical Products that Defendants manufactured and sold would enter the environment, resulting in the contamination of soil as well as raw drinking water supplies that rely upon surface water as a source, including Plaintiff's raw drinking water supply.

59.    Defendants knew or should have known of the risks posed by their Fluorochemical Products.

60.    The ordinary consumer—whether residential, industrial, municipal or otherwise that includes Plaintiff— would not have known or appreciated the risk of contamination from ordinary use and disposal of Defendants' Fluorochemical Products without an appropriate warning.

61.    Defendants had a duty to warn Plaintiff, regulators, the public, and the users of Fluorochemical Products of these hazards.

62.    Defendants, however, failed to provide adequate warnings of these hazards.

63.    Defendants' failure to issue the proper warnings relating to Fluorochemical Products containing PFAS affected the market's acceptance of these products containing PFAS.

64.    Defendants' failure to issue the proper warnings relating to Fluorochemical Products containing PFAS prevented the users of the product from treating them differently with respect to their use and environmental cleanup.

65.    Defendants' failure to issue the proper warnings related to Fluorochemical Products containing PFAS prevented the users of the product from seeking alternative products, including, but not limited to, using alternative products for purposes of training.

66.    Defendants' action in placing Fluorochemical Products containing PFAS into the stream of commerce without an appropriate warning as to use and disposal was a direct and proximate cause of Plaintiff's injury.

67.    Defendants knew or should have known, in the exercise of ordinary care, that their PFAS products were unreasonably dangerous and failed to warn of their dangerous propensity.

68.    As a direct and proximate result of the Defendants' failure to warn, Plaintiff has suffered damages, requiring investigation, treatment, filtration, clean-up, remediation, monitoring, operation, and maintenance costs and suffered other damages in an amount to be determined at trial. Defendants are strictly, jointly, and severally liable for all such damages.

**SECOND CAUSE OF ACTION**
**Negligence**
**(By Plaintiff against all Defendants)**

69.    Plaintiff repeats and restates the allegations set forth in the previous paragraphs as if fully set forth herein.

70.    Defendants had a duty to Plaintiff to manufacture and/or market, distribute, and sell their Fluorochemical Products in a manner that avoided contamination of the environment and raw drinking water supplies and avoided harm to those who foreseeably would be injured by the PFAS contained in Defendants' Fluorochemical Products.

71.    The use, including the disposal of Defendants' Fluorochemical Products by consumers, manufacturers, local fire training academies, fire departments, and others was a reasonably foreseeable use. Defendants knew or should have known that their Fluorochemical Products used and disposed of in this manner would contaminate soil, groundwater and surface water with PFAS, creating a significant threat to human health and the environment. Defendants had a duty to prevent the release into the environment of PFAS, in the foreseeable uses of their Fluorochemical Products.

72.    Defendants breached their duties when they negligently manufactured a dangerous product, negligently marketed, distributed, and sold that product, and/or negligently failed to give adequate warning that such products should not have been used and/or disposed of in a manner such as to result in the contamination of soil, surface water and groundwater.

### THIRD CAUSE OF ACTION
### Declaratory Relief
### (By Plaintiff against All Defendants)

73.    Plaintiff repeats and restates the allegations set forth in all previous paragraphs of this Complaint as if fully set forth herein.

74.    Defendants knew, or should have known, that their Fluorochemical Products, when used in a foreseeable and intended manner, were dangerous and created an unreasonable and excessive risk of harm to human health and the environment.

75.    Defendants intentionally, willfully, deliberately and/or negligently failed to properly warn, train, handle, control, dispose, and release noxious and hazardous contaminants and pollutants, such that Defendants created substantial and unreasonable threats to human health and the environment, which resulted from the foreseeable and intended use and storage of Fluorochemical Products and products containing fluorosurfactants and fluorochemicals.

76.    Among other things, Plaintiff may be required to take costly remedial action to investigate and remove PFAS contamination which will result in substantial costs, expenses, and damages in an amount to be proved at trial.

77.    These Defendants, and each of them, have failed to reimburse Plaintiff for the cost of investigation, remediation, cleanup, and disposal costs and/or deny any responsibility or liability for these damages and expenses Plaintiff will incur in the future.

78.    An actual controversy exists concerning who is financially responsible for abating actual or threatened pollution of Plaintiff's drinking water.

**Enhanced Compensatory Damages**
**(By Plaintiff against all Defendants)**

79.     Plaintiff repeats and restates the allegations set forth in all the previous paragraphs of this Complaint as if fully set forth herein.

80.     The wrongful acts of Defendants as described herein were committed intentionally, wantonly, maliciously and/or oppressively.

81.     Accordingly, the Plaintiff is entitled to enhanced compensatory damages awarded in each Count alleged in this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Enter judgment in its favor and against Defendants on each Count of this Complaint;

B.     An order that Defendants pay all damages suffered by Plaintiff, including but not limited to investigation, clean-up, abatement, remediation, monitoring, and operation and maintenance costs incurred by Plaintiff, or for which Plaintiff is or was legally responsible, to comply with the EPA's public health advisories and Pennsylvania groundwater cleanup target levels;

C.     An order imposing a constructive trust over any such proceeds for the benefit of the Plaintiff;

D.     An award to Plaintiff for the costs of this suit (including but not limited to expert fees) and reasonable attorneys' fees, as provided by law;

E.     An award for treble, punitive, and/or enhanced compensatory damages; and

F.     An award for such other and further relief as the nature of this case may require or as this court deems just, equitable and proper.

15

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Date: June 11, 2024

THE PENNSYLVANIA STATE UNIVERSITY

By Its Attorneys,

*/s/ Kenneth Sansone*

Kenneth Sansone
SL ENVIRONMENTAL LAW GROUP PC
175 Chestnut Street
San Francisco, CA 94133
Telephone: (415) 348-8300
Facsimile: (415) 3366-3047
ksansone@slenvironment.com

Kevin J. Madonna
LAW OFFICE OF KEVIN MADONNA, PLLC
48 Dewitt Mills Road
Hurley, NY 12443
Telephone: (845) 481-2622
Facsimile (845) 230-3111
km@kmadonnalaw.com

Michael A. London
Gary J. Douglas
Rebecca G. Newman
Tate J. Kunkle
DOUGLAS & LONDON, P.C.
59 Maiden Ln, 6th Fl,
New York, NY 10038
Telephone: (212) 566-7500
gdouglas@douglasandlondon.com
mlondon@douglasandlondon.com
rnewman@douglasandlondon.com
tkunkle@douglasandlondon.com

Ned McWilliams
LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.
316 S. Baylen St.
Pensacola, Florida 32502
Telephone: (850) 435-7138
nmcwilliams@levinlaw.com

16

Robert A. Bilott
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
bilott@taftlaw.com

David J. Butler
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone: (614) 221-2838
Facsimile: (614) 221-2007
dbutler@taftlaw.com